# United States District Court
# Central District of California

| | |
|---|---|
| ENRIQUE VERDUGO, on behalf of himself and others similarly situated,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>DENALI WATER SOLUTIONS, LLC; and DOES 1 through 10, inclusive,<br><br>　　　　　　　Defendants. | Case № 5:18-cv-00170-ODW (SHKx)<br><br>**ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF AMENDED CLASS ACTION SETTLEMENT [34]** |

## I.   INTRODUCTION

Plaintiff Enrique Verdugo brought this wage-and-hour class action suit against Defendant Denali Water Solutions, LLC, alleging that Verdugo and proposed class members work or worked for Denali as drivers in California and Denali failed to pay wages owed and other benefits. (*See generally* First Amended Complaint ("FAC"), ECF No. 20.) The parties have reached a settlement on behalf of the class. Verdugo moves without opposition for preliminary approval of the amended class action settlement. (Mot. for Prelim. Approval of Am. Class Action Settlement ("Mot. Am."), ECF No. 34.) For the reasons below, the Court **GRANTS** Verdugo's Motion.[1]

---

[1] After carefully considering the papers filed in connection with the motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. BACKGROUND

Denali is a company offering management and disposal solutions for its clients' organic waste materials. (FAC ¶ 4.) Denali employed Verdugo and the proposed class members as truck drivers within the State of California. (*Id.* ¶¶ 2, 12; Mot. Am. 3–4.) Verdugo alleges that he and the class he seeks to represent were paid on a piece-rate basis only, and thus denied wages owed, minimum wages, overtime wages, meal and rest breaks, and accurate wage statements, among other things. (FAC ¶¶ 2–3.)

Verdugo filed this class action in San Bernardino Superior Court, asserting nine causes of action.[2] (*See* Notice of Removal Ex. A ("Compl."), ECF No. 1-1.) Denali removed to this Court. (Notice of Removal.) The parties subsequently stipulated and the Court permitted Verdugo to file an FAC adding a tenth cause of action under California Labor Code section 2698, the Private Attorneys General Act ("PAGA"). (Order Granting Joint Stipulation, ECF No. 19.) The Court also granted the parties' stipulation permitting dismissal of Verdugo's third cause of action for unpaid wages and overtime under the Fair Labor Standards Act ("FLSA") without prejudice. (Order Granting Voluntary Dismissal of FLSA Claim, ECF No. 30.) Accordingly, all remaining claims arise under California law.

After investigation, discovery, mediation, and additional negotiation, the parties reached a settlement. (Mot. for Prelim. Approval of Class Action Settlement ("Mot.") 3–6, ECF No. 31.) The Court denied the parties' first motion for preliminary approval of class action settlement without prejudice and with leave to refile, due to concerns with certain aspects of the settlement and class notice. (Order Denying Prelim. Approval, ECF No. 33.) The parties met and conferred and amended those aspects of

---

[2] Plaintiff asserted causes of action for (1) Failure to Pay Minimum Wages; (2) Failure to Pay Wages and Overtime Under California Labor Code section 510; (3) Failure to Pay Wages Under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206, 207; (4) Meal Period Liability Under California Labor Code section 226.7; (5) Rest-Break Liability Under California Labor Code section 226.7; (6) Violation of California Labor Code section 226(a); (7) Violation of California Labor Code section 221; (8) Violation of California Labor Code section 203; and (9) Violation of California Business & Professions Code section 17200 *et seq.* (*See* Compl.)

2

the settlement agreement and class notice in response to the Court's concerns. (Mot. Am. 1–2; Decl. of Alvin B. Lindsay in Support of Mot. Am. ("Lindsay Decl. Am."), Exs. A ("Am. Settlement Agreement" or "Am. SA"), B ("Am. Class Notice"), ECF Nos. 34-2–34-4.) The Amended SA does not replace the original agreement, submitted to the Court with the parties' initial motion. (Mot. Am 9; Decl. of David Yeremian ("Yeremian Decl.") in Support of Mot., Ex. A ("Settlement Agreement" or "SA"), ECF No. 31-3.) Instead, the Amended SA revises specific provisions of the original and incorporates the terms and definitions of the original by reference. (Mot. Am. 9; Am. SA 2.) For clarity, the Court will refer individually to the original settlement document ("SA") and the amended settlement document ("Am. SA"), and collectively to the settlement agreements ("Settlement").

### III. SETTLEMENT TERMS

Verdugo proposed several sub-classes in his FAC, but the parties propose no sub-classes in the proposed Settlement, the Motion, or the Amended Motion. (SA 3; Am. SA 3; Mot. 10; Mot. Am. 3–4.) As such, the proposed class is uniform.

**A. Relevant Definitions**

The parties define the proposed class as "all individuals who are or previously were employed by [Denali] as drivers in the State of California at any time during the period beginning on December 21, 2013, and ending on the date of preliminary approval or forty-five (45) days from the execution of the Amended Settlement, whichever is earlier." (Am. SA 3.) The Settlement seeks appointment of Class Counsel, Class Representative, and ILYM Group, Inc. as the Settlement Administrator. (SA 8.) Discovery established that there are at least 68 members in the proposed class. (Mot. 10; Yeremian Decl. ¶ 25.)

**B. Settlement Fund**

The Settlement provides for a non-reversionary Gross Maximum Settlement Amount ("Settlement Fund") of $420,000.00, to resolve the claims on a class basis.

(SA 4.) This amount includes all shares of class members who do not request exclusion ("Participating Class Members"), as well as other costs and expenses detailed below.

Every Participating Class Member will automatically receive a share of the settlement fund based on the member's respective number of workweeks worked during the Class Period. (Mot. 10–11; SA 6.) Class members will have an opportunity to challenge the number of weeks they worked for Denali as a driver in California through a Challenge Form, provided with the Amended Class Notice, and the Settlement addresses how challenges will be resolved. (SA 18–19.) The parties estimate that a straight-average calculation results with each Participating Class Member receiving an individual award of approximately $3,661,78. (Mot. 2; Yeremian Decl. ¶¶ 39, 58.)

Other costs and expenses to be deducted from the Settlement Fund include Class Counsel attorneys' fees, not to exceed one-third (or $140,000) of the Settlement Fund; litigation expenses, not to exceed $10,000; Class Representative's Incentive Award, not to exceed $7,500; Administrator's costs, not to exceed $6,000; payment of $7,500 to the California Labor Workforce Development Agency ("LWDA") in connection with Verdugo's PAGA claim; and all taxes from payments under the Settlement and employer's share of payroll taxes. (SA 4–5; Lindsay Decl. Am. Ex. D, ECF No. 34-6.) The Settlement also addresses how unclaimed funds will be managed, with ultimate unclaimed funds distributed to the California State Unclaimed Wages Fund in the name of the employee for whom they were intended. (SA 13.)

**C.   Notice to Settlement Class**

Denali will provide the Administrator with the names, addresses and phone numbers (if available in Denali's records), social security numbers, hire dates, and if applicable, termination dates of potential class members from its employment records. (SA 14–15.) The Settlement details the Administrator's method of updating addresses, mailing the Notice, and managing mail returned as undeliverable. (SA 15–16; Am. SA 5.) The Administrator's obligation to trace addresses and re-mail undeliverable notices ends after two mailings or 45 calendar days. (Am. SA 5.)

The Court previously found the original proposed Class Notice internally inconsistent and the parties subsequently agreed to clarifying amendments. (Mot. Am. 6–9.) The Amended Class Notice ("Notice") informs potential class members that they need do nothing to participate in the settlement and receive a settlement award. (*Id.*; Am. Class Notice.) The Notice also informs class members how they may object to the settlement or request exclusion from the class. (Am. Class Notice 1, 4–5; SA 16–18.) Objecting class members who wish to appear at the final approval hearing must indicate their intent in their objection or they will waive their right to appear and object in person. (SA 17; Am. Class Notice 4–5.) As for exclusion, should more than five percent of the class members opt-out, Denali may cancel and void the Settlement. (SA 18.) Finally, the Notice informs potential class members that they may review the Settlement and other documents and information on the Settlement Administrator's case website or through the Court's record. (Am. Class Notice 6.)

**D.  Released Claims**

Class members will release "those facts and claims as alleged in the Action, as well as all claims that arise out of the facts, matters or occurrences referred to in the Action that could have been alleged as separate claims, causes of action, lawsuits or other theories of relief." (SA 22; *see also* Am. SA 6.) As a settlement condition, Verdugo dismissed his FLSA cause of action, leaving only California state law claims. (SA 9.) As such, class members will release their state law claims based on the factual predicate in the FAC.

### IV.  ANALYSIS

The Court first addresses whether the class may be provisionally certified for settlement purposes only, then evaluates the fairness, adequacy, and reasonableness of the proposed settlement, and finally reviews the adequacy of the proposed Notice.

**A.  Class Certification**

Class certification is a prerequisite to preliminary settlement approval. Class certification is appropriate only if each of the four requirements of Rule 23(a) and at

least one of the requirements of Rule 23(b) are met. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614, 621 (1997). Under Rule 23(a), the plaintiff must show that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

Next, the proposed class must meet at least one of the requirements of Rule 23(b). Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Where class certification is sought for settlement purposes only, the certification inquiry still "demand[s] undiluted, even heightened, attention." *Amchem*, 521 U.S. at 620.

### 1. *Rule 23(a) Requirements*

The Court previously found that the proposed class meets all four Rule 23(a) factors and is aware of no new facts that would alter that conclusion. First, the proposed class is sufficiently numerous. While "[n]o exact numerical cut-off is required," "numerosity is presumed where the plaintiff class contains forty or more members." *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009). The class size in this case is at least 68 members. Thus, this class is sufficiently numerous.

Next, the claims of the potential class members demonstrate common questions of fact and law. *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012) ("commonality only requires a single significant question of law or fact."). Verdugo alleges all potential class members were subject to Denali's piece-rate pay policy and thus denied wages and benefits. (FAC ¶ 9.) Thus, common questions among the class include whether Denali failed to pay wages for all hours worked, failed to pay appropriate minimum, regular, and overtime rates, made unlawful deductions, failed to

provide meal and rest breaks, and failed to furnish accurate wage statements to class members working as drivers for Denali in California. At this juncture, no discernable individualized issues appear to exist which might detract from the common questions of fact and law. As such, the class meets this requirement.

Verdugo also meets the typicality requirement. Typicality in this context means that the representative claims are "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Here, Verdugo's claims arise out of the same circumstances as those of the other class members. (*See generally* FAC.) Thus, Verdugo shares material common factual and legal issues with the other settlement class members and satisfies typicality.

Finally, Verdugo and his counsel satisfy the adequacy requirement for representing absent class members. This requirement is met where the named plaintiff and his counsel do not have conflicts of interest with other class members and will vigorously prosecute the interests of the class. *Hanlon*, 150 F.3d at 1020. Verdugo and his counsel are aware of no potential conflicts. (Yeremian Decl. ¶¶ 9, 76.) Counsel appears well-qualified and experienced with wage-and-hour class action litigation. (*See id.* ¶¶ 3–9; Decl. of Alvin B. Lindsay in Support of Mot. ¶¶ 3–12, ECF No. 31-4.) In this action, Counsel has engaged in thorough investigation, discovery, negotiations, and mediation on behalf of the class. (Yeremian Decl. ¶¶ 17–24.) Counsel has also efficiently and thoroughly addressed the Court's concerns with the original settlement documents. (Lindsay Decl. Am. ¶¶ 6-14.) These facts support counsel's adequacy and vigorous representation of the putative class. As such, the proposed class and its representative satisfy the Rule 23(a) requirements.

### 2. *Rule 23(b)(3) Requirements*

The Court previously found that the proposed class meets the requirements of Rule 23(b)(3) and, as above, is aware of no new facts that would alter that conclusion. Rule 23(b)(3) requires the Court to find "that the questions of law or fact common to

class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Questions of law or fact common to class members in this case predominate over individualized questions because the issues at stake—whether all members of the class were subject to Denali's piece-rate pay structure, which allegedly deprived them of wages due and owing; minimum, regular, and overtime pay; rest and meal breaks; accurate wage statements; and subjected them to unlawful deductions—are common to the class. Further, a class action appears to be a far superior method of adjudicating the class members' claims. The overall claim that the Denali piece-rate pay structure violated state law as to all potential class members makes individual actions prone to inefficiency; sixty-eight individual actions would be inefficient, and if each potential class member were to go it alone the costs of litigation for each plaintiff would dwarf any recovery. Accordingly, the class meets the requirements of Rule 23(b)(3).

As each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b) are met, the class may be provisionally certified for settlement purposes.

### B. Fairness of Settlement Terms

The Court next must consider whether the proposed settlement warrants preliminary approval. For preliminary approval, "the court evaluates the terms of the settlement to determine whether they are within a range of possible judicial approval." *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 319 (C.D. Cal. 2016) (internal quotation marks and alterations omitted). A court may preliminarily approve a settlement and direct notice to the class if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). "It is the settlement taken as a whole, rather than the

individual component parts, that must be examined for overall fairness." *Hanlon*, 150 F.3d at 1026. "The settlement must stand or fall in its entirety"; a court may not "delete, modify or substitute" its provisions. *Id.*

The settlement negotiations appear fair and adequate and the proposed settlement terms appear to come within the range of possible judicial approval. The parties have addressed the Court's concerns regarding prior perceived deficiencies and the Court observes no obvious deficiencies in the amendments, the Settlement, or the Notice.

### 1. *Adequacy of Negotiations*

The Court is satisfied that settlement was the product of "serious, informed, non-collusive negotiations." *Spann*, 314 F.R.D. at 319. The parties thoroughly investigated their claims and engaged in discovery before completing a full day of mediation with Hon. Michael D. Marcus (Ret.) on May 30, 2018. (SA 6–7.) Although they were unable to reach agreement at that time, parties subsequently agreed to the terms of the mediator's proposal. (SA 7.) On June 13, 2018, the parties filed a Notice of Settlement. (ECF No. 25.) Verdugo asserts that "the parties' settlement negotiations have been non-collusive, adversarial, and at arm's length" at all times, "while recognizing the uncertainty, risk, expense, and delay" that continuing litigation would entail. (Mot. 5.) Under these circumstances, the Court accepts that the negotiations were adequate.

### 2. *Settlement Terms*

After carefully reviewing the terms of the settlement, the Court finds that the settlement does not unfairly give preferential treatment to any party and falls within the range of possible approval.

> Assessing a settlement proposal requires the district court to balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026. "Ultimately, the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations, and rough justice." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525–26 (C.D. Cal. 2004) (internal quotation marks omitted). "The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." *Id.*

Here, as with most class actions, there is risk to both parties in continuing towards trial. The parties reached settlement only with the help of a mediator and after thoroughly evaluating the strengths and risks to both sides. (Yeremian Decl. ¶¶ 63–72.) The settlement treats all members of a uniform class equally, awarding shares based on number of workweeks. Accordingly, the settlement does not unfairly favor any member, represents a compromise, and avoids uncertainty for all parties involved.

### 3. *Settlement Funds*

The Court notes no obvious deficiencies in the amount and allocations of settlement funds. However, as previously noted, the Court finds the upward departures in both the requested Class Representative Incentive Award and Class Counsel Fees concerning.

#### a. *Incentive Award*

The Settlement provides that Class Counsel will seek approval of an incentive award of $7,500 for Verdugo as Class Representative. (SA 10.) "[D]istrict courts [should] scrutinize carefully [incentive] awards so that they do not undermine the adequacy of the class representatives." *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013). In evaluating incentive awards, courts should look to "the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947 (9th Cir. 2015) (quoting *Staton v. Boeing, Co.*, 327 F.3d 938, 977 (9th Cir. 2003)). "Generally, in the Ninth Circuit, a $5,000 incentive award is presumed reasonable." *Bravo v. Gale Triangle, Inc.*, No. CV 16-03347 BRO (GJSx), 2017 WL 708766, at *19 (C.D. Cal. Feb. 16, 2017) (citing

*Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012)).

Verdugo, as the lead plaintiff, assisted "with investigation and evaluation of the class claims, including producing documents and attending multiple telephonic conferences and meetings with counsel." (Mot. 24–25.) Yet the Court finds little support for the upward departure from the presumed-reasonable award of $5,000. Further, an award of $7,500 is more than double the expected average class member recovery. (*See* Mot. 13 (estimating a straight average share of $3,661.78).) However, at the preliminary approval stage, the question is whether the requested award falls within the range of possible approval. At this time, the Court finds that it does. The Court reiterates that final approval will depend on adequate support for the requested award.

        b.    *Attorneys' Fees*

The Settlement provides that Class Counsel may seek attorneys' fees in an amount not to exceed $140,000, or roughly one-third of the settlement fund. (SA 9–10.) "While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement . . . courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). Twenty-five percent recovery is the benchmark for attorneys' fees, although courts in the Ninth Circuit have found upward departures to fall within the acceptable range. *See id.* at 942 (noting 25% benchmark); *Powers v. Eichen*, 229 F.3d 1249, 1256–57 (9th Cir. 2000) (upward departure acceptable when expressly explained). Further, "[w]here a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *In re Bluetooth*, 654 F.3d at 942.

Counsel is experienced in wage-and-hour class action litigation and the fee request, while high, falls within the range identified as potentially acceptable in the

Ninth Circuit. Accordingly, preliminary approval is appropriate, though the Court reiterates that final approval will depend on counsel providing sufficient information to support the requested award.

### *4.* *Release of Claims*

"Beyond the value of the settlement, potential recovery at trial, and inherent risks in continued litigation, courts also consider whether a class action settlement contains an overly broad release of liability." *Spann*, 314 F.R.D. at 327; *see also Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) ("A settlement agreement may preclude a party from bringing a related claim in the future even though the claim was not presented and might not have been presentable in the class action, but only where the released claim is based on the identical factual predicate as that underlying the claims in the settled class action.") (internal quotation marks omitted).

The Settlement releases all claims brought or that could have been brought based on the factual predicate in the action. (SA 21–22; Am. SA 6.) The Parties seek approval of a class definition encompassing "all individuals who are or previously were employed by [Denali] as drivers in the State of California" during the Class Period. (SA 3; Am. SA 3.) Thus, while the release is broad in that it releases claims both known and unknown, the released claims are appropriately limited to the factual predicate of this action.

## C. Sufficiency of Notice

To find notice to absent class members sufficient, the Court must analyze both the type and content of the notice. Considering the parties' amendments, the Court finds the type and content of notice sufficient.

### *1.* *Type of Notice*

"[T]he court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). For class action settlements, "[t]he court must direct notice in a reasonable manner to all class members who would

be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). The parties agree that the Administrator will distribute notice to all potential class members. (SA 14–16; Am. SA 5.) The contact information for potential class members is available through Denali's employment records, and the Administrator will notify all potential class members via U.S. Mail. The Administrator's obligation to trace undeliverable addresses and re-mail notices ends after two mailings or 45 days. The parties extended the obligation period from 30 to 45 days, to reach a maximum number of potential class members. Additionally, potential class members will have an opportunity to review the Settlement either on the Settlement Administrator's case website or through the Court's records. The Court finds the procedures for notice sufficient and the most practicable under the circumstances.

### 2. *Content of Notice*

Class notice must state "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B)(i)–(vii). "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (internal quotation marks omitted). The notice "does not require detailed analysis of the statutes or causes of action forming the basis for the plaintiff class's claims, and it does not require an estimate of the potential value of those claims." *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012).

The Court finds the Notice contains all the information required under the Federal Rules. The Notice includes the basics of the case, the class definition, and the class action's claims. (Am. Class Notice 1–3.) It explains the procedure for opting out,

challenging a class member's workweeks, and objecting to the settlement. (*Id.* at 4–5.) The parties clarified in the Notice that class members who object to the settlement and wish to appear at the final approval hearing must indicate their intent in their objection or waive the right to appear. (*Id.* at 5.) The parties also clarified that class members need do nothing to participate and receive an award. (*Id.* at 1.) The Notice informs potential class members that remaining a member of the class and receiving a payment will result in the class member giving up his/her claims and being bound by the Settlement. (*Id.* at 1, 4.) Finally, the Notice informs potential class members that they may review the Settlement and other documents for themselves online at the Settlement Administrator's case website or the Court's records. (*Id.* at 6.)

## V. CONCLUSION

The Court **GRANTS** Plaintiff's Motion for Preliminary Approval of Amended Class Action Settlement. (ECF No. 34.) The Court (1) provisionally certifies the Class, as defined in the Settlement, for settlement purposes; (2) preliminarily approves the parties' Settlement; (3) appoints Plaintiff Verdugo as the Class Representative; (4) appoints Plaintiff's counsel as Class Counsel; (5) appoints ILYM Group, Inc. as Settlement Administrator; and (6) approves the form of the parties' proposed Amended Class Notice and Challenge Form.

The final approval hearing shall be held on **September 16, 2019 at 1:30 p.m.** at the United States Courthouse, 350 West First Street, Courtroom 5D, Los Angeles, CA 90012.

**IT IS SO ORDERED.**

May 6, 2019

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**

14